Michael Machat, Esq. SB#109475
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email:  info@machatlaw.com

Attorneys for Plaintiff
Vampire Family Brands, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC, | CASE NO. |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT; UNFAIR COMPETITION and DILUTION/TARNISHMENT** |
| vs. | |
| APPLEBEES RESTAURANTS, LLC, APPLEBEES SERVICES, INC., , DINE BRANDS GLOBAL, INC., STEPHEN P JOYCE, PATRICK KIRK, JOHN CYWINSKI, FLYNN RESTAURANT GROUP, GREG FLYNN, APPLE AMERICAN,  RMH FRANCHISE CORP, DOHERTY ENTERPRISES, APPLE GOLD, WISCONSIN HOSPITALITY GROUP, SSCP MANAGEMENT, , and DOES 1 – 20, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff VAMPIRE FAMILY BRANDS, LLC hereby alleges and asserts:

## I.  JURISDICTION AND VENUE

1.    Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

2.    This action arises under the Trademark Laws of the United States, including particularly, Section 43 of the Lanham Act, 15 U.S.C. §1125. Jurisdiction is conferred on this Court by 15 U.S.C. Section 1121(a), by 28 U.S.C. Section 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*, and by principles of pendent jurisdiction. Venue is proper in this District under 28 U.S.C. §§ 1391(a) by virtue of the fact that at least one defendant resides within this District.

## II.  THE PARTIES

3.    Plaintiff VAMPIRE FAMILY BRANDS, LLC ("VAMPIRE FAMILY BRANDS") is a Delaware Limited Liability Company with its main business office located in Los Angeles County, California.

4.    Defendant Applebees Restaurants, LLC is upon information and belief, an LLC based in Glendale, California.

5.    Defendant Applebees Services, Inc., is upon information and belief, a Kansas Corporation, headquartered and based out of Glendale, California.

6.    Defendant Dine Brands Global, Inc., ("Dine Brands") is upon information and belief, a Delaware Corporation, that is headquartered and based out of Glendale, California. Defendant Dine Brands controls and is responsible for approximately 1693 Applebees Restaurants that are infringing the Vampire trademark selling loss leading $1 Vampire Cocktails.

7.    Upon information and belief, Defendant Stephen P. Joyce resides in Southern California and as the CEO of Dine Brands, is directly responsible for the

Applebees defendants decision to attempt to usurp Plaintiff's Vampire and Dracula trademarks for alcoholic cocktails.

8.     Defendant Patrick Kirk, is upon information and belief, an officer of one of the Applebee Defendants that takes the title of "Vice President of Beverage Innovations" at Applebees.  Upon information and belief, defendant Kirk resides in California.

9.     Defendant John Cywinski, is upon information and belief, an officer of defendant Applebees Restaurants, LLC and the President of the Applesbees Restaurants.   Upon information and belief, defendant Cywinski resides in California.

10.     Defendant Flynn Restaurant Group, is upon information and belief, an organization of a type unknown that is based in San Francisco, California.

11.     Defendant Greg Flynn, is upon information and belief, the CEO of defendant Flynn Restaurant Group, and operates his business from San Francisco. Defendant Greg Flynn, upon information and belief, resides in California.

12.     Defendant Apple American is upon and belief, an organization of a type unknown, based in San Francisco, and controlled by defendants Flynn Restaurant Group and Greg Flynn.  Defendant Apple American boasts it is the largest franchisee of Applebees Restaurant operating 460 Applebee restaurants.

13.     Defendant  RMH Franchise Corp, is upon information and belief an organization of a type unknown.  Defendant RMH Franchise Corp is upon information and belief, the second largest Applebees franchisee in the United States, operating approximately 175 Applebee restaurants.

14.     Defendant Doherty Enterprises, is upon information and belief an organization of a type unknown that operates a large number of Applebees Restaurants.

15.     Defendant Apple Gold, is upon information and belief an organization of a type unknown, that also owns a large number of Applebees Restaurants.

16.     Defendant Wisconsin Hospitality Group, is upon information and belief, an organization of a type unknown, that also owns a large number of Applebees Restaurants.

17.     Defendant SSCP Management is upon information and belief, an organization of a type unknown, that operates 76 Applebee units including 13 in Northern California.

18.     Defendants Applebees Restaurants, LLC, Applebees Services, Inc., Dine Brands, Stephen P. Joyce, Patrick Kirk,  John Cywinski, Greg Flynn, Flynn Restaurant Group, Apple American, RMH Franchise Corp., Doherty Enterprises, Apple Gold, Wisconsin Hospitality Group, SSCP Management and are referred to herein as the "Applebees Defendants."

19.     Plaintiff avers upon information and belief, that the Applebees Defendants have conspired to violate the trademark rights of Plaintiff (as described further herein) for the mutual benefit of each of the defendants.  Plaintiff further alleges that the primary place from which the conspiracy was hatched was from defendant Dine Brands Global headquarters in Glendale, California and that each of the Applebees co-defendants was an active conspirator who acted together and affirmatively agreed to join into the conspiracy.   As such, each Applebees defendant is derivatively liable for the acts and omissions of the Applebees co-defendants.  They have agreements, among themselves, that were negotiated and entered into in California, that govern the way in which they split the spoils from their trademark infringement and unlawful competition. Defendants purposely directed their actions and conspiracy against the Plaintiff, which the Defendants knew to be headquartered in California.

20.     Plaintiff does not know the true names or capacities of defendants named herein as DOES 1 through 20 inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will seek leave to amend this First Amended Complaint to allege the true names, capacities, and circumstances alleging the liability of said defendants at such time as the same is ascertained.  Plaintiff is informed and believes and, on that basis, alleges that each fictitiously named cross-defendant is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages  as herein alleged were  proximately caused by the conduct of such defendants.

21.     At all times herein mentioned, Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, each of the defendants sued herein, were the agents, servants, employees or attorneys of their co-defendants, and in doing the things hereinafter alleged were acting within the purpose, course and scope of such agency and employment, and with the authority, permission and consent of their co-Defendants.

### III.    FACTS GIVING RISE TO THIS ACTION

22.     Plaintiff VAMPIRE FAMILY BRANDS via its predecessors in interest has been marketing food and beverages under the following brand names for many years, including:  VAMPIRE (for wines – US Trademark Registration No. 2263907); DRACULA (for wine – US Trademark Registration No. 3319536); VAMPYRE (for Spirits – US Trademark Registration No. 3082097); VAMPIRE (for chocolate and coffee  - US Trademark Registration No. 3669827) VAMPIRE for Olive oil and Balsamic vinegar – US Trademark Registration No. 4776927); VAMP H20 (for Water – US Trademark Registration No. 3895288);  VAMPIRE (for Restaurant and Bar Services – US Trademark Registration No. 3978444);

VAMPIRE (for Glass beverage-ware -- US Trademark Registration No. 3290011); and VAMPIRE TACO (for Tacos – US Trademark Registration No. 4939034).

23.    By virtue of its extended use in commerce, several of the aforementioned registrations have become incontestable, including its registration numbers 2263907, 3082097, 3290011, 3319536, 3669827, and 3978444

24.    VAMPIRE FAMILY BRANDS also is the owner of the slogans TASTE OF IMMORTALITY and SIP THE BLOOD OF THE VINE, (TM Registrations 3167606 and 3079403, respectfully.)  Both of these marks also have become incontestable.

25.    The origin of Vampire wine, and VAMPIRE FAMILY BRAND's claim of right goes back to 1988, when its founder released a French bottled Algerian Syrah under the brand name Vampire.   The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine."  Vampire Family Brand's predecessors in interest began to use the slogan "Taste of Immortality" by at least 1995, if not earlier. Although the labels have changed over the years, along with the sourcing from Algeria to Italy to Transylvania and finally to Napa, the marketing has remained playful.

26.    However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was actually extremely good, with Vampire wine having won numerous gold medals throughout the years and winning scores of 90 Points and higher.

27.    Plaintiff via its predecessors' in interest expanded its wine and spirits business into gourmet quality foods, including Vampire Fine Belgian Chocolate and Vampire Gourmet Coffee (US Reg. No. 3669827) and Vampire Gourmet Olive Oil and Vampire Gourmet Balsamic Vinegar (US. Reg. No. 4776927.)

28.    Plaintiff has expanded into restaurant services (US Reg. No. 3978444), and Plaintiff actively licenses its VAMPIRE TACO mark (US. Reg. No.

4939034)  to a chain of approximately 70 restaurants that  make a fantastic tasting taco branded as Vampire Taco.

29.    Plaintiff's natural zone of expansion includes other foods and beverages, such as hot sauce, barbecue sauce, hamburgers, beers, and other restaurant venues.   Plaintiffs have plans for each of these.

30.    Plaintiff is also the owner of the US Registration No. 5444375  for the word mark VAMPIRE for Pre-mixed alcoholic beverages, other than beer based, and Prepared Alcoholic Cocktails.  Plaintiff has a great tasting Gourmet Bloody Mary cocktail, that it markets as its Vampire Gourmet Bloody Mary Cocktail.

31.    Plaintiff's VAMPIRE family of brands are available for the world to see on its website VAMPIRE.COM, and Plaintiffs' family of VAMPIRE Brands have received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, The Star Tribune, The Chicago Sun Times, and many more.   In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper for approximately five minutes with Ashley Greene from Twilight fame, CNN Headline News, MTV's Viva La Bam, Food TV, and many more.

32.    In 2017 Plaintiff began selling Vampire Gourmet Bloody Mary Cocktails in a can which are designed to be the go-to ready to drink premixed bloody mary, perfect for busy bars, outdoor venues, picnics, and anyone on the go wanting a gourmet ready to drink bloody mary cocktail.

33.    Plaintiff also markets and sells wine branded as Dracula and has been doing so for more than a dozen years.  Plaintiff is the owner of US Trademark Registration No. 20070618 for Dracula for wine.

**A.   The Obvious Intentional and Willful Infringement by defendants Flynn Restaurant Group and Gregg Flynn.**

34.     Prior to this lawsuit being filed, two of the defendants named herein, defendants Flynn Restaurant Group and Gregg Flynn infringed upon Plaintiff's trademarks, including its Vampire Taco registered trademark by unlawfully selling Burritos and other food items marketed as Vampire at approximately 40 Taco Bell restaurants owned and/or controlled by Flynn Restaurant Group and Gregg Flynn.

35.     Within days of the Taco Bell corporate parent Yum Brands being served with a lawsuit about the infringing  use of Vampire, Flynn Restaurant Group and Gregg Flynn, according to Yum Brands attorney in the *Vampire Family Brands v. Taco Bell IP Holdings, et al* (Case No. 8:19-cv-01388-DOC-ADS, filed in this District) stopped selling Vampire burritos and other food marketed as Vampire.

36.     It is fairly simple for a layman to go online to the USPTO website and search to see if a trademark has been registered.    Possibly, the Taco Bell Defendants did not conduct any due diligence before selecting Plaintiff's Vampire mark as its mark for burritos, steak fries and hot sauce, and conceivably that might explain why they would foolishly infringe upon Plaintiff's Vampire mark  since Vampire burritos are obviously confusingly similar to Vampire tacos (which are sold under license from Plaintiff throughout the country.)

37.     That lame excuse of "I didn't know" can no longer apply to defendants Flynn Restaurant Group and Greg Flynn, who once informed about Plaintiff and its portfolio of Vampire food and beverage brands, knew of Plaintiff's preexisting Vampire mark, but nevertheless joined forces and conspired with the Applebees defendants to begin to market Vampire Cocktails in early October, in an effort to revive food sales at Applebees.

**B.** **The Applebees Defendants hijacked Plaintiff's Vampire mark because they were desperate to get customers into their doors to buy food.**

38.     According to an article in Forbes Magazine, dated August 24, 2016,

TIMES ARE tough again at Applebee's. The brand is aging and is being squeezed between less-expensive counter-service places (Chick-fil-A, Chipotle) that have eaten it lunch business and the horde of competitors (Chili's, Olive Garden) fighting for sit-down dollars. In the second quarter Applebee's domestic same-restaurant sales fell 4.2% compared with the same period in 2015, the fourth consecutive quarter of increasing declines. From the time of the Applebee's and IHOP deal through February 2015, Dine Equity's stock had roughly tripled in value to $109 (trouncing the S&P 500 index's 48% rise during that period) but has since fallen 30%. Hoping to reverse the sales slump, in May, at a cost of $75 million, the brand rolled out new menu featuring steaks, chicken and fish grilled over a wood fire. It's also rolling out a new look, adding some hipster touches to Applebee's family-friendly neighborhood tavern vibe: wooden tables, exposed brick walls and interior lights spelling out the word "BAR."

39.     A year later, Fortune Magazine wrote, "Applebee will close between 105 and 135 locations in 2017, the restaurant chain's parent company said in a statement Thursday."   Fortune Magazine August 10, 2017.

40.     On December 12, 2017,   Eater.com published an article entitled**,** **"**Why Applebee's Is Selling $1 Cocktails: **How cheap cocktails are helping the struggling casual chain stay afloat."**   The title says it all.

41.     On November 4, 2018, CNBC reported, "As Cheap alcoholic beverages and dinner deals lured in customers during the third quarter and helped boost same-store sales up 7.7 percent, John Cywinski, president of Applebee's, told CNBC. 'This is massive growth compared to the rest of the industry, which saw same-store sales up 1.2 percent in the same period, according to Black Box Intelligence data.'"

42. Recently, still anxious to make money, the Applebee defendants resorted to selling $1 alcoholic cocktails wrongfully named VAMPIRE to get customers to dine at their restaurants knowing they were infringing Plaintiff's trademarks.

43.    In order to drum up business the Applebee defendants' sent out a press release.  "The $1 Vampire is a freaky Tiki drink served with a side of fangs," Patrick Kirk, vice president of beverage innovation at Applebee's, said in an email press release. "Seriously, where else can you buy a delicious cocktail and walk away with a Halloween costume for only a buck?"

44.    Due to the press announcement, news spread through social media. Plaintiff learned out about the Applebee defendants unlawful use of its Vampire mark in connection with cocktails when it saw some publicity about a Vampire cocktail online.

45.    On October 1, 2019, Business Wire wrote, "Get a bite out of this. Applebee's® is celebrating the scariest time of the year with a brand new Neighborhood Drink of the Month. Starting today, and for the rest of October, participating Applebee's across the country are sucking you in with the $1 Vampire."

46.    The Applebee defendants presumably  instructed Business Wire to add the ® trademark registration symbol to the Applebees name and misinformed the press that Plaintiff owns trademark registrations for Vampire in various classes, including as referenced above, for wine, spirits and cocktails, and more.

47.    Kansas City on the Cheap.com reported,

Applebee's latest $1 Neighborhood Drink of the Month is putting the freaky in Tiki. Starting today, and for the rest of October, participating Applebee's across the country are sucking customers in with the $1 Vampire drink. Served in a 10-ounce mug, the $1 Vampire is  a mix of rum, strawberry, dragon fruit, passion fruit and a dash of pineapple. Celebrating

gement, etc

the scariest time of the year, the $1 Vampire is served with a cherry on top and a set of complimentary vampire fangs. It's a drink and a costume all for a buck.

Combine this drink deal with Applebee's Pasta and Grill combos (starting at $9.99) and you're set for dinner. You get to choose a protein (steak, chicken, salmon or shrimp), a pasta (ravioli, alfredo or stuffed rigatoni) and two sides.

48.     SILIVE.com's  headline  on October 4, 2019, was Applebee's Dollar Vampire: Dare to take a sip on Staten Island.

49.     On October 3, 2019, EatDrinkDeals.com wrote, "Every day through October 31, 2019, get a Vampire made with rum, dragon fruit, passion fruit and strawberry.  Plus, it comes with fangs.  Please don't bite the other guests.   The 10 oz cocktail is just $1.  For the official announcement of the drink special see the Applebee's Facebook page.

50.   EatDrinkDeals.com posted the following picture (which also was posted throughout other social media.)



**Applebee's Grill & Bar** about 2 weeks ago

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15

The $1 Vampire has emerged from its coffin. It's made with rum, dragon fruit, passion fruit and strawberry. And it comes with fangs.

12K    10K    16K

16
17

51.    MileHighOnTheCheap.com ran a similar story with a similar picture, adding,

18
19
20
21

"Famished frugal diners can pair the bargain beverage with the chain's popular **2 for $22** meal for maximum savings. It's not often you can get an appetizer, two entrées and drinks for under $30, so the two deals combined make for a perfect, low-cost "date night.""

22
23
24
25
26
27

52.     Other publications highlighted the same story and message (as intended by the Applebees defendants), go to Applebees to drink a Vampire cocktail for $1and order food while you're there.  Other publications that repeated the same intentional infringing message include, Delish.com, Vinepair.com, Myrecipes.com, News.meredithlmg.com, DoYouRemember.com, PopSugar.com, Rare.us, Elitedaily.com, and bustle.com, and many more.

28

53.     On October 3, 2019, the national newspaper USAToday.com wrote about it and featured a video showing off defendants' infringing Vampire cocktail.

54.     Defendants made its video featuring its infringing Vampire cocktail available on its Facebook page, on its Applebees website, on its Instagram pages and on YouTube and more places.

55.     Defendants infringing Vampire cocktail was shown on both Sacramento's ABC 10, and San Francisco's KRON4.

56.     ABC 10's website has a link to defendant's twitter page showing the following infringing image:

**Applebee's**
✔
@Applebees

The #DollarVampire has risen for October. It's served with rum, dragon fruit, passion fruit, strawberry and real fangs.



2,310
5:23 AM - Oct 1, 2019

57.     Publicity about defendants' infringing cocktail appeared in numerous other outlets, including radio outlets, such as https://alt1037dfw.radio.com and many more presently unknown.

58.     According to the press release sent out by defendant Patrick Kirk with the approval of defendants including defendants  Cywinski, Stephen P. Joyce and Gregg Flynn,

> "Applebee's Drink of the Month is a Halloween-themed punch is "a freaky
> tiki rum punch. They're calling it a Vampire. The purple liquid is served in
> a glass mug with plastic vampire teeth and a blood-red cherry."
> [Thrillist, October 1, 2019 article]

59.   Defendants Applebees' Facebook page that features the infringing cocktail shows that it is followed by approximately six million people.

60.     Applebees' Twitter page is followed by approximately 632,000 followers.  Defendants posted an infringing video featuring the infringing Vampire Cocktail that had as of this writing over 323,000 views.  The video starts out with a story about the infringing Vampire cocktail and asks its followers to complete the incomplete story told on the video.

61.   Images of the infringing cocktail were also posted on Defendants' Instagram page which has 561,000 followers.

62.     The Applebee Defendants continue to unlawfully promote the $1 Vampire Cocktail on the home page of its website, on its Facebook Pages, on Instagram and elsewhere on social media.   They unlawfully released a cartoon ad featuring the $1 Vampire Cocktail, and they have unlawfully placed signage prominently outside the doors of their restaurants promoting the $1 Vampire Cocktail.   The signs on the window promote the $1 Vampire cocktail with a goofy picture of a vampire as in the Facebook campaign.   The $1 Vampire cocktail comes with hokey teeth.  Simply put the Applebee defendants' marketing of the

$1 Vampire cocktail is the antithesis of Plaintiff's marketing of Vampire Wine and its other Vampire products, including its bloody mary, as upscale great tasting product.   YouTubers are saying they drank 3 Vampires (referring to defendant's infringing drink.)

63.  Moreover, Plaintiff observed that Applebees also sells a cocktail called "Dracula's juice" made from rum, which it sells for $7.99.  This drink infringes and is confusingly similar to Plaintiff's trademarks.

**C.  The Obvious Intentional and Willful Infringement by all the defendants who refused to stop infringing plaintiff's marks.**

64.  On Friday morning, October 18, 2019, defendants Stephen P. Joyce, Patrick Kirk, John Cywinski and Greg Flynn each received, via federal express, a draft version of this complaint complaining about their unlawful conduct and seeking damages and injunctive relief.

65.  Notwithstanding the notice of infringement, all of the defendants refused to stop and continue to infringe.   The home page of the Applebees website still prominently features the infringing Vampire Cocktail drink.   The infringing drink is still featured on defendants' social media, and their promotion and sales of the infringing Vampire cocktail still continues as of this writing.

66.  On Friday October 25, 2019, Plaintiff received notice from a business associate in the beverage business that he and his wife (who's also in the beverage business) saw a large Applebees Vampire billboard along Interstate 5 near Irvine.  This contact wondered if Plaintiff had done some kind of business deal with Applebees.

67.  Subsequently, Plaintiff googled the terms "Applebees Vampire billboard" and discovered that defendants are unlawfully advertising their unauthorized association on billboards elsewhere as well, including in San

Francisco, where an article indicated that defendants are sharing a billboard with a contentious political matter.

68.     Plaintiff conducted a google search for the terms "Applebees Vampire" and found approximately 160 hits for magazines, newspapers, radio shows, television shows that published the story of defendants coming out with their illegal Vampire cocktail.    A copy of this search result is attached as Exhibit A.  The combination of press, advertising and promotion is obviously detrimental to Plaintiff's brands, and defendants refused to stop even knowing about the harm they continue to cause.

69.     Plaintiff markets its brands through a national network of wholesalers, and via the website: www.vampire.com.    Vampire wine sells for anywhere between $10 to $15 per bottle nationally at retail stores.    Vampire wine is also available in bars and restaurants on wine lists.

70.     Plaintiff and its associates have worked hard to insure that they put the best wine in the bottle as possible.  Over the last few years, Plaintiff's Vampire family of wines have received some great reviews and have won Gold Medals, including Gold Medals at the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, Vampire Pinot Noir,   a Gold Medal and 92 Rating from the Los Angeles International Wine & Spirits Competition awarded to Vampire Cabernet Sauvignon, Gold Medals at the Texas International Rodeo Wine Competition, and 92 ratings for its highest end Trueblood Cabernet Sauvignon.

71.     Plaintiff has spent substantial amounts of time and money building up, advertising, and promoting its brands.  By virtue of the popularity of its brands, its advertising, promotion, and sales, plus the popularity of its websites, including vampire.com, Plaintiff has built up and own extremely valuable goodwill which is symbolized by Plaintiff's various marks.

72.   Defendants intentional wrongful acts are harming Plaintiff's brands reputation and are diluting the brands and are disparaging.

73.   If defendants are not stopped from marketing food and beverages using Plaintiff's Vampire mark and/or Dracula mark or a mark confusingly similar to Vampire (or Dracula), then consumers will likely be confused about the source and origin of defendants' products and services and mistakenly conclude that defendants' products or services are produced by, or associated with Plaintiff and/or its licensees.

74.   Alternatively, if defendants are not stopped from marketing food and beverages using Plaintiff's Vampire mark and/or Dracula mark or a mark confusingly similar to Vampire (or Dracula), then consumers will likely be confused about the source and origin of Plaintiff's (or its licensees') products and services and mistakenly conclude that Plaintiff's (or its licensees') products or services are produced by, or associated with defendants.

**COUNT I**
**VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)**

75.   Plaintiff realleges the allegations in paragraphs 1 though 74.

76.   Defendants have large resources with which to market and advertise its goods and services.  Defendants' resources vastly exceed those of Plaintiff.  Consequently, marketing and advertising efforts by Defendants are likely to mislead consumers to believe that Plaintiff's goods and services may be unauthorized use of trademarks that Applebees owns.  If defendants are able to continue their wrongful acts, consumers are likely to be misled to believe that Plaintiff is misusing the *VAMPIRE mark (and/or Dracula* mark).

77.   Also, Defendants' use of the word VAMPIRE  (and Dracula) as cocktails, so closely resembles Plaintiff's products and services (including Plaintiff's Vampire Gourmet Bloody Mary Cocktail) that the public is likely to be

confused and deceived, and to assume erroneously that defendants' goods are those of Plaintiff, or that defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

78.   Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by defendants.

79.   Plaintiff has no control over the nature and quality of the goods and services offered and sold by defendants or its licensees.   Any failure, neglect, or default by defendants or its licensees in providing such products or services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's efforts to continue to protect its outstanding reputation and preventing Plaintiff from further building its reputation. Said failure, neglect, or default will result in loss of revenue by Plaintiff, and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the VAMPIRE mark, all to the irreparable harm of Plaintiff.

80. In fact, the Applebees defendants sale of a Vampire Cocktail for $1 interferes with and hampers Plaintiff's ability to market and promote its wines. Plaintiff's Vampire Wine normally sells in restaurants for between $8 and $10 per glass, so a $1 Vampire cocktail cheapens the perception of Plaintiff's wines. Similarly, a $1 Vampire cocktail cheapens the perception of Plaintiff's Vampire gourmet bloody mary making it harder for Plaintiff to market and promote its bloody mary.

81.   Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name VAMPIRE (and Dracula) and continue to do so.   Defendants have promoted, publicized, advertised, offered for sale, and/or sold, products and services using the

VAMPIRE (and Dracula) mark through persons not authorized, employed by, or associated in any way with Plaintiff and have used the aforementioned trade name and trademark as a false designation and false representation for food products.

82. None of defendants' activities complained of in this complaint have been authorized by Plaintiff, and such unauthorized use by Defendants of Plaintiff's trademarks and/or trade names in interstate commerce, commerce substantially affecting interstate commerce in this district, and elsewhere throughout the United States, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names, and such activities are likely to cause confusion, mistakes, and to deceive the public at large.

83. Upon information and belief, Defendants have acted with the unlawful purpose of:

    a. Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

    b. Soliciting Plaintiff's customers and/or potential customers, attempting to sell, and selling to such customers and potential customers, goods and services marketed under the VAMPIRE mark (and Dracula mark) through persons not authorized by, employed by, or associated in any way with Plaintiff;

    c. Inducing others to infringe Plaintiff's trademarks and trade names; and

    d. Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

84. Defendants' conduct, as alleged in this complaint, constitutes a

violation of 15 U.S.C. § 1125(a).

85.    If Defendants are allowed to continue marketing and selling the accused goods and services, Plaintiff will be damaged as alleged in this complaint, and the Defendants will profit thereby.  Furthermore, unless the Court permanently enjoins Defendants conduct as alleged in this complaint, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

86.    Defendants have hijacked Plaintiff's trademark.  Hijacking Plaintiff's Vampire trademark improved the relevance of ads on searches that included "Vampire" keywords and made defendants' promotion more interesting.  It led to more people hearing about Applebees, leading them to come in and try the $1 infringing drink and buy some food at regular prices.   Highjacking Plaintiff's mark lowered defendants costs to advertise while improving defendants' sales and profits.

87. Defendants' aforementioned acts and conduct is being done willfully and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop.  Plaintiff is therefore entitled to treble damages arising therefore, disgorgement of defendants' profits, as well as reimbursement of Plaintiff's attorneys' fees and costs.

88.    The intentional nature of defendant's acts (particularly defendants Flynn Restaurant Group and Greg Flynn who previously infringed upon Plaintiff's Vampire Taco mark by selling Vampire Burritos and who obviously knew of Plaintiff) makes this an exceptional case under 15 U.S.C. §1117(a).

89.    The intentional nature of defendant's acts and conduct makes this a case suitable for an award of Three Times Defendants' profits plus attorneys fees.

90.    *Furthermore, since the Applebee defendants are using Plaintiff's Vampire mark as a loss leader to drive people into their restaurants to eat, the*

*Applebee defendants ought to pay the profits from their food sales to Plaintiff as well.*

## COUNT II

## <u>VIOLATION OF LANHAM ACT 15 U.S.C. §1114</u>
### (Against All Defendants)

91.    Plaintiff repeats each allegation contained in paragraphs 1 through 90 as though set forth herein at length.

92.    Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered marks.

93.    Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, to be deceived, and to erroneously assume that Defendants' marketing and sale of their VAMPIRE (and Dracula) branded goods and services, as packaged, advertised and promoted, are those of Plaintiff, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

94.    Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff.  Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

95.    Defendants aforesaid infringing conduct has been willful and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop.  Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their Vampire branded cocktails and restaurant services will hinder the prospects of future commercial success of Plaintiff's VAMPIRE family of brands, including its further foray into the food, cocktail and restaurant space.  Plaintiff is therefore

entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

## COUNT III

## <u>VIOLATION OF LANHAM ACT 15 U.S.C. §1125c</u>

### (Against All Defendants)

96.    Plaintiff repeats each allegation contained in paragraphs 1 through 95 as though set forth herein at length.

97.    Plaintiff's Vampire family of brands have appeared on The View, Anderson Cooper, CNN Headline News, Entertainment tonight, MTV's Viva La Bam, The Food Channel, A & E, and have been written up in widely circulated magazines such as Star Magazine, Shape, Maxim, InStyle, Elle, Spin, Rolling Stone, Marie Claire,  Cosmo Girl, The Wine Enthusiast, and in regional newspapers such as the LA Times, the NY Times, the Houston Chronicle, and others, and as such have developed a fame all of their own catapulting the Vampire brand into the category of a famous mark.

98.    Plaintiff's associates and predecessors in interest periodically work with Hollywood film companies and engage in mutually beneficial promotions. For example, Plaintiff's products have been found in the Blade films (starring Wesley Snipes) and HBO's Trueblood Series, and Plaintiff has done promotions connecting its Vampire family of brands to films such as the Underworld series of films  (starring Kate Beckinsale) in addition to Blade Trinity, and it has had its wines featured and poured at film premiers, including such as Quentin Tarrantino's *Dusk Til' Dawn* and *Dark Shadows* (starring Johnny Depp.)   A sampling of just some of the press talking about Plaintiff's Vampire family of brands is attached as Exhibit B.

99.     Plaintiff fears that defendants' marketing excursions into the world of vampires using the word Vampire as a mark for goods and services will cause consumers to believe that Plaintiff's Vampire branded wines and bloody mary cocktail (and other goods and services) are not of as high quality as they actually are and will tarnish, dilute and otherwise damage the reputation of Plaintiff's goods and services. This will lead to irreparable harm to Plaintiff's goodwill, reputation, and sales.

100.     Plaintiff also fears that the disparaging nature of defendant's silly marketing will interfere with Plaintiff's ability to attract those producing serious first class Hollywood films to want to do future joint promotions with Plaintiff and its family of Vampire brands.

## COUNT IV

### UNFAIR COMPETITION – COMMON LAW, AND CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 et seq.

#### (Against All Defendants)

101.     Plaintiff repeats each allegation contained in paragraphs 1 through 100 as though set forth herein at length.

102.     Defendants have engaged in unfair competition perpetrated against Plaintiff by reason of the conduct alleged herein.

103.     The unlawful and unfair conduct is injuring the goodwill of Plaintiff and its lawful licensees.

104.     Defendants are liable for the unfair competition, and/or are liable for aiding and abetting such conduct.

105.     By this conduct, Plaintiff has directly suffered injuries and each Defendant has been unjustly enriched.

106.     Plaintiff is entitled to restitution, the recovery of damages, and the

recovery of the profits earned by Defendants by virtue of their conduct.

107.   As a consequence of the unfair competition by Defendants, Plaintiff is suffering irreparable injury, by reason of which such conduct should be enjoined.

108.   Plaintiff is entitled to reasonable attorneys' fees.

109.   Plaintiff is informed and believes, and on that basis alleges, that the aforementioned conduct of Defendants is willful, oppressive, fraudulent, and malicious, and Plaintiff is therefore entitled to punitive damages.

**COUNT V**

**UNFAIR COMPETITION – COMMON LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500 et seq.**

**(Against All Defendants)**

110.   Plaintiff repeats each allegation contained in paragraphs 1 through 109 as though set forth here at length.

111.   Defendants' use of Plaintiff's family of VAMPIRE brands and trademarks misrepresents the nature, characteristics, identity, and source or sponsorship of Defendants' goods and services, constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, inter alia, California Business and Professions Code §§17500 et seq. and California common law.

112.   Defendants' use of Plaintiff's family of VAMPIRE brands and trademarks is likely to deceive and will continue to deceive the consuming public. Defendants knew, recklessly disregarded, or reasonably should have known that such packaging, advertising, marketing, and promotion was untrue and/or misleading.

113.   As a result of the conduct described above, Defendants have been

and/or will be unjustly enriched at the expense of Plaintiff and the general public. The interests of the general public and Plaintiff are, therefore, closely related.

114.   Defendants have been unjustly enriched, among other things, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing Plaintiff's VAMPIRE goods and services,  but instead were purchasing Defendants' goods and services which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

115.   Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff, on behalf of itself and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendants immediately to cease such acts of unfair competition and false advertising, and enjoining Defendants from continuing to market, promote, advertise, offer for sale, and sell, and advertise goods or services using the Vampire mark. Plaintiff additionally requests an order disgorging Defendants' ill-gotten gains and restitution of all monies wrongfully acquired by Defendants by means of its acts of unfair competition and false advertising. Plaintiff further requests they be paid interest and attorneys' fees.

WHEREFORE, Plaintiff prays for judgment as follows:

1.     That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

2.     That the Court adjudge and decree that Defendants have infringed Plaintiff's registered VAMPIRE (and Dracula) trademarks willfully and intentionally.

3.     That the Court adjudge and decree that Defendants unlawfully diluted and diminished Plaintiff's rights in its VAMPIRE family of trademarks.

4.     That the Court adjudge and decree that Defendants unlawfully induced others to infringe upon Plaintiff's trademarks.

5.     That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them, or with any of them from:

  a.  Using VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, (including Dracula), trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and/or promotion of beverage products and beverage accessories;

  b.  Selling, offering to sell, marketing, distributing, advertising and/or promoting any FOOD or BEVERAGE product, goods or service with the word VAMPIRE or DRACULA displayed on any product, packaging, advertising or promotional materials;

  c.  Representing directly or indirectly by words or conduct that any food or beverage product, goods or services offered for sale, sold, promoted, or advertised by Defendant, is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

  d.  Aiding or abetting in unfair competition against Plaintiff;

  e.  Aiding or abetting in false advertising; and

  f.  Inducing others to engage in any of these aforementioned acts.

6.     That the Court award an amount to be determined at trial but at least an amount equivalent to treble the amount of Defendants' illicit profits (including

profits made by the Applebee defendants from food sales since they used Plaintiff's mark as a loss leader) or Plaintiff's lost profits, whichever is greater.

7. That the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising to cover a national campaign at least ten times the size of defendant's unlawful promotional campaign which would cover billboard, radio and television advertising to make up for the damage done by defendants advertising and promotion.

8. That the Court award Judgment against Defendant for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

9. That the Court Order such other, further and different relief as the nature of this action may require and as the Court may deem just and proper.

10. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

Respectfully submitted,
MACHAT & ASSOCIATES, P.C.

Dated: October 27 , 2019     By:     *Michael Machat*

Michael Machat, Esq.
Attorneys for Plaintiff
Vampire Family Brands, LLC

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues raised by the Complaint.

Respectfully submitted,
MACHAT & ASSOCIATES, P.C.

Dated:  October  27, 2019                    By: *Michael Machat*
                                             Michael Machat, Esq.
                                             Attorneys for Plaintiff