KARIN G. PAGNANELLI (SBN 174763)
kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000

Attorneys for Defendant
Dine Brands Global, Inc.

MICHAEL G. KELBER (*pro hac vice*)
mkelber@nge.com
ANDREW S. FRAKER (*pro hac vice*)
afraker@nge.com
NEAL, GERBER & EISENBERG LLP
Two North La Salle Street, Suite 1700
Chicago, IL 60602
Telephone: (312) 269-5280

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLEBEES RESTAURANTS, LLC, APPLEBEES SERVICES, INC., DINE BRANDS GLOBAL INC., STEPHEN P JOYCE, PATRICK KIRK, JOHN CYWINSKI, FLYNN RESTAURANT GROUP, GREG FLYNN, APPLE AMERICAN, RMH FRANCHISE CORP, DOHERTY, ENTERPRISES, SSCP MANAGEMENT, APPLE INVESTORS GROUP; APPLE AB ENTERPRISES; APPLE NORTH INC; AND APPLE CORE ENTERPRISES INC.<br><br>Defendants. | Case No. 2:19-cv-09222-DOC (ADSx)<br><br>**DEFENDANTS' <u>SECOND</u> ANSWER TO FIRST AMENDED COMPLAINT**<br><br>**COUNTERCLAIMS OF APPLEBEE'S SERVICES, INC.**<br><br>**DEMAND FOR JURY TRIAL** |

APPLEBEE'S SERVICES, INC.,

     Counterclaimant,

     v.

VAMPIRE FAMILY BRANDS, LLC,

     Counterclaim Defendant.

## SECOND ANSWER AND COUNTERCLAIMS

Defendants, Dine Brands Global, Inc., Applebee's Restaurants, LLC, Applebee's Services, Inc. (hereafter the "Dine Defendants"), Stephen P Joyce, Patrick Kirk, John Cywinski, Flynn Restaurant Group, Greg Flynn, Apple American, RMH Franchise Corp, Doherty Enterprises, SSCP Management, Apple Investors Group, Apple AB Enterprises, Apple North Inc., and Apple Core Enterprises Inc. (hereafter, collectively with the Dine Defendants, "Defendants")[1], answering the Complaint of Plaintiff Vampire Family Brands, LLC. (hereinafter referred to as "Plaintiff"), hereby deny, admit and aver, upon knowledge and upon information and belief, as follows:

## I. JURISDICTION AND VENUE

1.     Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act. **RESPONSE:** Defendants state that the Complaint speaks for itself and deny any liability with regard to any and all of Plaintiff's claims.

2.     This action arises under the Trademark Laws of the United States, including particularly, Section 43 of the Lanham Act, 15 U.S.C. §1125. Jurisdiction is conferred on this Court by 15 U.S.C. Section 1121(a), by 28 U.S.C. Section 1338(a), in that this case arises  under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*, and by principles of pendent jurisdiction. Venue is proper in this District under 28 U.S.C. §§ 1391(a) by virtue of the fact that at least one defendant resides within this District.

---

[1] Dine Defendants, Stephen P Joyce, Patrick Kirk, John Cywinski, Flynn Restaurant Group, Greg Flynn, Apple American, RMH Franchise Corp, Doherty Enterprises, and SSCP Management previously filed an answer to the First Amended Complaint on September 24, 2020 [Dkt 51].

**RESPONSE:** Admitted by all Defendants.

## II. <u>THE PARTIES</u>

3.      Plaintiff VAMPIRE FAMILY BRANDS, LLC ("VAMPIRE FAMILY BRANDS") is a Delaware Limited Liability Company with its main business office located in Los Angeles County, California.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

4.      Defendant Applebees Restaurants, LLC is upon information and belief, an LLC based in Glendale, California.

**RESPONSE:** Admitted by the Dine Defendants. The non-Dine Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

5.      Defendant Applebees Services, Inc., is upon information and belief, a Kansas Corporation, headquartered and based out of Glendale, California.

**RESPONSE:** Admitted by the Dine Defendants. The non-Dine Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

6.      Defendant Dine Brands Global, Inc., ("Dine Brands") is upon information and belief, a Delaware Corporation, that is headquartered and based out of Glendale, California. Defendant Dine Brands controls and is responsible for approximately 1693 Applebees Restaurants that are infringing the Vampire trademark selling loss leading $1 Vampire Cocktails.

**RESPONSE:** Admitted by the Dine Defendants that Defendant Dine Brands Global, Inc. that is a Delaware corporation that is headquartered and based out of Glendale, California. The non-Dine Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph with regard to Dine Brands Global, Inc's corporate structure. and therefore deny the same. Denied by all Defendants as to the remaining allegations in this paragraph.

7.      Upon information and belief, Defendant Stephen P. Joyce resides in Southern California and as the CEO of Dine Brands, is directly responsible for the Applebees defendants decision to attempt to usurp Plaintiff's Vampire and Dracula trademarks for alcoholic cocktails.

**RESPONSE:** Admitted by the Dine Defendants and Defendant Stephen P. Joyce that he is the CEO of Dine Brands Global, Inc. and has a residence in Southern California. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph with regard to Mr. Joyce and therefore deny the same. Denied by all Defendants as to the remaining allegations in this paragraph.

8.      Defendant Patrick Kirk, is upon information and belief, an officer of one of the Applebee Defendants that takes the title of "Vice President of Beverage Innovations" at Applebees. Upon information and belief, defendant Kirk resides in California.

**RESPONSE:** The Dine Defendants and Defendant Patrick Kirk state that he is the Vice President of Bar & Beverage at Applebee's and that he resides in California. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph with regard to Mr. Kirk and therefore deny the same. Denied by all Defendants as to the remaining allegations in this paragraph.

9.      Defendant John Cywinski, is upon information and belief, an officer of defendant Applebees Restaurants, LLC and the President of the Applesbees Restaurants. Upon information and belief, defendant Cywinski resides in California.

**RESPONSE:** The Dine Defendants  and Defendant John Cywinski state that he is the President of Applebee's and that he has a residence in California. Denied by all Defendants as to the remaining allegations in this paragraph.

10.      Defendant Flynn Restaurant Group, is upon information and belief, an organization of a type unknown that is based in San Francisco, California.

**RESPONSE:** Defendants Flynn Restaurant Group and Greg Flynn state that Flynn Restaurant Group maintains its corporate office in San Francisco, California. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny the same. Denied by all Defendants as to any other allegations in this paragraph.

11.     Defendant Greg Flynn, is upon information and belief, the CEO of defendant Flynn Restaurant Group, and operates his business from San Francisco. Defendant Greg Flynn, upon information and belief, resides in California.

**RESPONSE:** Defendants Greg Flynn and Flynn Restaurant Group state that Greg Flynn is the CEO of Flynn Restaurant Group and that he resides in California. Defendants Greg Flynn and Flynn Restaurant Group further state that Flynn Restaurant Group maintains its corporate office in San Francisco, California. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny the same.

12.     Defendant Apple American is upon and belief, an organization of a type unknown, based in San Francisco, and controlled by defendants Flynn Restaurant Group and Greg Flynn. Defendant Apple American boasts it is the largest franchisee of Applebees Restaurant operating 460 Applebee restaurants.

**RESPONSE:** The Dine Defendants and Defendants Apple American Group LLC, Flynn Restaurant Group and Greg Flynn state that Apple American Group LLC is a subsidiary of Flynn Restaurant Group LP. The Dine Defendants and Defendants Apple American Group LLC, Flynn Restaurant Group LP and Greg Flynn further state that Apple American Group LLC is the largest franchisee of Applebee's restaurants and that it operates 450 Applebee's restaurants. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny the same.

13.     Defendant RMH Franchise Corp, is upon information and belief an organization of a type unknown. Defendant RMH Franchise Corp is upon information and belief, the second largest Applebees franchisee in the United States, operating approximately 175 Applebee restaurants.

**RESPONSE:** The Dine Defendants and Defendant RMH Franchise Corp. states that the franchise group is named RMH Franchise Holdings, Inc., and that it operates 131 Applebee's restaurants. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny the same

14.     Defendant Doherty Enterprises, is upon information and belief an organization of a type unknown that operates a large number of Applebees Restaurants.

**RESPONSE:** The Dine Defendants and Defendant Doherty Enterprises, Inc. state that Doherty Enterprises, Inc. operates Applebee's restaurants as a franchisee. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny the same. Defendants object to the allegation that it "operates a large number of Applebees [sic] Restaurants" as vague, and therefore deny the same.

15.     Defendant SSCP Management is upon information and belief, an organization of a type unknown, that operates 76 Applebee units including 13 in Northern California.

**RESPONSE:** The Dine Defendants and Defendant SSCP Management, Inc. state that SSCP Management, Inc. is a corporation that operates 74 Applebee's restaurants, including 13 in California, as a franchisee. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph and therefore deny the same.

16.     Defendant Apple Investors Group is upon information and belief, an organization of a type unknown based in Chino, California, that operates 45 Applebees units.

**RESPONSE:** Admitted by the Dine Defendants and Defendant Apple Investors Group. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

17.     Defendant Apple AB Enterprises is upon information and belief, an organization of a type unknown based in Redding, CA, that operates 10 Applebees units including at least one in California.

**RESPONSE:** Admitted by the Dine Defendants and Defendant Apple AB Enterprises. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

18.     Apple North Inc, is upon information and belief, an organization of a type unknown based in Ventura, California, that operates an Applebees restaurant.

**RESPONSE:** Admitted by the Dine Defendants and Defendant Apple North Inc. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

- 6 -

19.     Apple Core Enterprises Inc is upon information and belief, an organization of a type unknown based in Minot, North Dakota, that operates 22 Applebees units including at least one in California.

**RESPONSE:** Admitted by the Dine Defendants and Defendant Apple Core Enterprises Inc. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

20.     Defendants Applebees Restaurants, LLC, Applebees Services, Inc., Dine Brands, Stephen P. Joyce, Patrick Kirk, John Cywinski, Greg Flynn, Flynn Restaurant Group, Apple American, RMH Franchise Corp., Doherty Enterprises, SSCP Management, Apple Investors Group, Apple AB Enterprises, Apple North Inc and Applecore Enterprises Inc are referred to herein as the "Applebees Defendants."

**RESPONSE:** Defendants state that the allegations in this paragraph speak for themselves.

21.     Plaintiff avers upon information and belief, that the Applebees Defendants have conspired to violate the trademark rights of Plaintiff (as described further herein) for the mutual benefit of each of the defendants. Plaintiff further alleges that the primary place from which the conspiracy was hatched was from defendant Dine Brands Global headquarters in Glendale, California and that each of the Applebees co-defendants was an active conspirator who acted together and affirmatively agreed to join into the conspiracy. As such, each Applebees defendant is derivatively liable for the acts and omissions of the Applebees codefendants. They have agreements, among themselves, that were negotiated and entered into in California, that govern the way in which they split the spoils from their trademark infringement and unlawful competition. Defendants purposely directed their actions and conspiracy against the Plaintiff, which the Defendants knew to be headquartered in California.

**RESPONSE:** Denied by all Defendants.

22.     At all times herein mentioned, Plaintiff is informed and believes and based thereon alleges that, at all times herein mentioned, each of the defendants sued herein, were the agents, servants, employees or attorneys of their co- defendants, and in doing the things hereinafter alleged

were acting within the purpose, course and scope of such agency and employment, and with the authority, permission and consent of their co-Defendants.

**RESPONSE:** Denied by all Defendants.

### III. FACTS GIVING RISE TO THIS ACTION

23.     Plaintiff VAMPIRE FAMILY BRANDS via its predecessors in interest has been marketing food and beverages under the following brand names for many years, including: VAMPIRE (for wines – US Trademark Registration No. 2263907); DRACULA (for wine – US Trademark Registration No. 3319536); VAMPYRE (for Spirits – US Trademark Registration No. 3082097); VAMPIRE (for chocolate and coffee - US Trademark Registration No. 3669827) VAMPIRE for Olive oil and Balsamic vinegar – US Trademark Registration No. 4776927); VAMP H20 (for Water – US Trademark Registration No. 3895288); VAMPIRE (for Restaurant and Bar Services – US Trademark Registration No. 3978444); VAMPIRE (for Glass beverage-ware -- US Trademark Registration No. 3290011); and VAMPIRE TACO (for Tacos – US Trademark Registration No. 4939034).

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

24.     By virtue of its extended use in commerce, several of the aforementioned registrations have become incontestable, including its registration numbers 2263907, 3082097, 3290011, 3319536, 3669827, and 3978444

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

25.     VAMPIRE FAMILY BRANDS also is the owner of the slogans TASTE OF IMMORTALITY and SIP THE BLOOD OF THE VINE, (TM Registrations 3167606 and 3079403, respectfully.) Both of these marks also have become incontestable.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

26.     The origin of Vampire wine, and VAMPIRE FAMILY BRAND's claim of right goes back to 1988, when its founder released a French bottled Algerian Syrah under the brand name

Vampire. The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine." Vampire Family Brand's predecessors in interest began to use the slogan "Taste of Immortality" by at least 1995, if not earlier. Although the labels have changed over the years, along with the sourcing from Algeria to Italy to Transylvania and finally to Napa, the marketing has remained playful.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

26.   However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was actually extremely good, with Vampire wine having won numerous gold medals throughout the years and winning scores of 90 Points and higher.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

27.   Plaintiff via its predecessors' in interest expanded its wine and spirits business into gourmet quality foods, including Vampire Fine Belgian Chocolate and Vampire Gourmet Coffee (US Reg. No. 3669827) and Vampire Gourmet Olive Oil and Vampire Gourmet Balsamic Vinegar (US. Reg. No. 4776927.)

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

28.   Plaintiff has expanded into restaurant services (US Reg. No. 3978444), and Plaintiff actively licenses its VAMPIRE TACO mark (US. Reg. No. 4939034) to a chain of approximately 70 restaurants that make a fantastic tasting taco branded as Vampire Taco.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

29.   Plaintiff's natural zone of expansion includes other foods and beverages, such as hot sauce, barbecue sauce, hamburgers, beers, and other restaurant venues. Plaintiffs have plans for each of these.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

30.     Plaintiff is also the owner of the US Registration No. 5444375 for the word mark VAMPIRE for Pre-mixed alcoholic beverages, other than beer based, and Prepared Alcoholic Cocktails. Plaintiff has a great tasting Gourmet Bloody Mary cocktail, that it markets as its Vampire Gourmet Bloody Mary Cocktail.

**RESPONSE:** Denied that Plaintiff "has" and "markets" a Vampire Gourmet Bloody Mary Cocktail. Defendants further state that, on information and belief, Plaintiff has never marketed a commercially available "Vampire Gourmet Bloody Mary Cocktail" product and that US Registration No. 5444375 is invalid and unenforceable. Defendants are without information or knowledge sufficient to admit or deny the remaining allegations of this paragraph, and therefore deny the same

31.     Plaintiff's VAMPIRE family of brands are available for the world to see on its website VAMPIRE.COM, and Plaintiffs' family of VAMPIRE Brands have received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, The Star Tribune, The Chicago Sun Times, and many more. In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper for approximately five minutes with Ashley Greene from Twilight fame, CNN Headline News, MTV's Viva La Bam, Food TV, and many more.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

32.     In 2017 Plaintiff began selling Vampire Gourmet Bloody Mary Cocktails in a can which are designed to be the go-to ready to drink premixed bloody mary, perfect for busy bars, outdoor venues, picnics, and anyone on the go wanting a gourmet ready to drink bloody mary cocktail.

**RESPONSE:** Denied that Plaintiff "began selling Vampire Gourmet Bloody Mary Cocktails" in 2017. Defendants further state that, on information and belief, Plaintiff has never sold "Vampire

Gourmet Bloody Mary Cocktails." Defendants are without information or knowledge sufficient to admit or deny the remaining allegations of this paragraph, and therefore deny the same.

33.    Plaintiff also markets and sells wine branded as Dracula and has been doing so for more than a dozen years. Plaintiff is the owner of US Trademark Registration No. 20070618 for Dracula for wine.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

A.    **The Obvious Intentional and Willful Infringement by defendants Flynn Restaurant Group and Gregg Flynn.**

34.    Prior to this lawsuit being filed, two of the defendants named herein, defendants Flynn Restaurant Group and Gregg Flynn infringed upon Plaintiff's trademarks, including its Vampire Taco registered trademark by unlawfully selling Burritos and other food items marketed as Vampire at approximately 40 Taco Bell restaurants owned and/or controlled by Flynn Restaurant Group and Gregg Flynn.

**RESPONSE:** With regard to all Defendants other than Flynn Restaurant Group LP and Greg Flynn, Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to Defendants Flynn Restaurant Group LP and Greg Flynn.

35.    Within days of the Taco Bell corporate parent Yum Brands being served with a lawsuit about the infringing use of Vampire, Flynn Restaurant Group and Gregg Flynn, according to Yum Brands attorney in the *Vampire Family Brands v. Taco Bell IP Holdings, et al* (Case No. 8:19-cv-01388-DOC-ADS, filed in this District) stopped selling Vampire burritos and other food marketed as Vampire.

**RESPONSE:** Defendants Flynn Restaurant Group LP and Greg Flynn state that they have never sold Vampire burritos or other food marketed as Vampire. Defendants Flynn Restaurant Group LP and Greg Flynn further state that subsidiaries of Bell American Group, LLC, a wholly owned subsidiary of Flynn Restaurant Group, offered a menu item called "vampire steaked fries" (seasoned fries topped with marinated steak, nacho cheese sauce, shredded cheddar cheese, pico de

gallo, and a spicy/savory "vampire sauce"), which was also available in burrito form, for the duration of a five-week promotion scheduled by Taco Bell in 2019. Defendants Flynn Restaurant Group LP and Greg Flynn deny all other allegations in this paragraph. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

36.     It is fairly simple for a layman to go online to the USPTO website and search to see if a trademark has been registered.    Possibly, the Taco Bell Defendants did not conduct any due diligence before selecting Plaintiff's Vampire mark as its mark for burritos, steak fries and hot sauce, and conceivably that might explain why they would foolishly infringe upon Plaintiff's Vampire mark since Vampire burritos are obviously confusingly similar to Vampire tacos (which are sold under license from Plaintiff throughout the country.)

**RESPONSE:** With regard to all Defendants other than Flynn Restaurant Group LP and Greg Flynn, Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to Defendants Flynn Restaurant Group LP and Greg Flynn.

37.     That lame excuse of "I didn't know" can no longer apply to defendants Flynn Restaurant Group and Greg Flynn, who once informed about Plaintiff and its portfolio of Vampire food and beverage brands, knew of Plaintiff's preexisting Vampire mark, but nevertheless joined forces and conspired with the Applebees defendants to begin to market Vampire Cocktails in early October, in an effort to revive food sales at Applebees.

**RESPONSE:** With regard to all Defendants other than Flynn Restaurant Group LP and Greg Flynn, Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to Defendants Flynn Restaurant Group LP and Greg Flynn.

**B.**    **The Applebees Defendants hijacked Plaintiff's Vampire mark because they were desperate to get customers into their doors to buy food.**

38.     According to an article in Forbes Magazine, dated August 24, 2016,

TIMES ARE tough again at Applebee's. The brand is aging and is being squeezed between less-expensive counter-service places (Chick-fil-A, Chipotle) that have eaten it lunch business and the horde of competitors (Chili's, Olive Garden)

fighting for sit-down dollars. In the second quarter Applebee's domestic same-restaurant sales fell 4.2% compared with the same period in 2015, the fourth consecutive quarter of increasing declines. From the time of the Applebee's and IHOP deal through February 2015, Dine Equity's stock had roughly tripled in value to $109 (trouncing the S&P 500 index's 48% rise during that period) but has since fallen 30%. Hoping to reverse the sales slump, in May, at a cost of $75 million, the brand rolled out new menu featuring steaks, chicken and fish grilled over a wood fire. It's also rolling out a new look, adding some hipster touches to Applebee's family-friendly neighborhood tavern vibe: wooden tables, exposed brick walls and interior lights spelling out the word "BAR."

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly appearing in a third-party publication and whether they have been accurately quoted, and therefore deny the same.

39.    A year later, Fortune Magazine wrote, "Applebee will close between 105 and 135 locations in 2017, the restaurant chain's parent company said in a statement Thursday." Fortune Magazine August 10, 2017.

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly appearing in a third-party publication and whether they have been accurately quoted, and therefore deny the same.

40.    On December 12, 2017, Eater.com published an article entitled**,** "Why Applebee's Is Selling $1 Cocktails **How cheap cocktails are helping the struggling casual chain stay afloat.**" The title says it all.

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly appearing in a third-party publication and whether they have been accurately quoted, and therefore deny the same.

41.    On November 4, 2018, CNBC reported, "As Cheap alcoholic beverages and dinner deals lured in customers during the third quarter and helped boost same-store sales up 7.7 percent, John Cywinski, president of Applebee's, told CNBC. 'This is massive growth compared to the rest of the industry, which saw same-store sales up 1.2 percent in the same period, according to Black Box Intelligence data.'"

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly made by a third party and whether they have been accurately quoted, and therefore deny the same.

42.     Still anxious to make money, the Applebee defendants resorted to selling $1 alcoholic cocktails wrongfully named VAMPIRE to get customers to dine at their restaurants knowing they were infringing upon Plaintiff's trademarks.

**RESPONSE:** Denied by all Defendants.

43.     In order to drum up business the Applebee defendants' sent out a press release. "The $1 Vampire is a freaky Tiki drink served with a side of fangs," Patrick Kirk, vice president of beverage innovation at Applebee's, said in an email press release. "Seriously, where else can you buy a delicious cocktail and walk away with a Halloween costume for only a buck?"

**RESPONSE:** Defendants admit that the quoted text originated in an Applebee's press release and state that the quoted text speaks for itself. Defendants deny any other allegations in this paragraph.

44.     Due to the press announcement, news spread through social media. Plaintiff learned out about the Applebee defendants unlawful use of its Vampire mark in connection with cocktails when it saw some publicity about a Vampire cocktail online.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

45.     On October 1, 2019, Business Wire wrote, "Get a bite out of this. Applebee's® is celebrating the scariest time of the year with a brand new Neighborhood Drink of the Month. Starting today, and for the rest of October, participating Applebee's across the country are sucking you in with the $1 Vampire."

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly appearing in a third-party publication and whether they have been accurately quoted, and therefore deny the same.

46.     The Applebee defendants presumably instructed Business Wire to add the ® trademark registration symbol to the Applebees name and misinformed the press that Plaintiff owns trademark registrations for Vampire in various classes, including as referenced above, for wine, spirits and cocktails, and more.

**RESPONSE:** Denied by all Defendants.

47.     Kansas City on the Cheap.com reported,

1

2

3

4

5

6

       Applebee's latest $1 Neighborhood Drink of the Month is putting the freaky in Tiki. Starting today, and for the rest of October, participating Applebee's across the country are sucking customers in with the $1 Vampire drink. Served in a 10-ounce mug, the $1 Vampire is a mix of rum, strawberry, dragon fruit, passion fruit and a dash of pineapple. Celebrating the scariest time of the year, the $1 Vampire is served with a cherry on top and a set of complimentary vampire fangs. It's a drink and a costume all for a buck.

       Combine this drink deal with Applebee's Pasta and Grill combos (starting at $9.99) and you're set for dinner. You get to choose a protein (steak, chicken, salmon or shrimp), a pasta (ravioli, alfredo or stuffed rigatoni) and two sides.

7

8

9

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly appearing in a third-party publication and whether they have been accurately quoted, and therefore deny the same.

10

11

    48.    SILIVE.com's headline on October 4, 2019, was Applebee's Dollar Vampire: Dare to take a sip on Staten Island.

12

13

14

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly appearing in a third-party publication and whether they have been accurately quoted, and therefore deny the same.

15

16

17

18

    49.    On October 3, 2019, EatDrinkDeals.com wrote, "Every day through October 31, 2019, get a Vampire made with rum, dragon fruit, passion fruit and strawberry. Plus, it comes with fangs. Please don't bite the other guests. The 10 oz cocktail is just $1. For the official announcement of the drink special see the Applebee's Facebook page.

19

20

21

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly appearing in a third-party publication and whether they have been accurately quoted, and therefore deny the same.

22

23

    50.    EatDrinkDeals.com posted the following picture (which also was posted throughout other social media.)

24

25



**Applebee's Grill & Bar** about 2 weeks ago

26

27

Neal, Gerber & Eisenberg LLP
Attorneys at Law
Chicago

28

1
2
3
4
5
6
7
8
9



The $1 Vampire has emerged from its coffin. It's made with rum, dragon fruit, passion fruit and strawberry. And it comes with fangs.
12K    10K    16K

10   **RESPONSE:** Defendants are without information or knowledge with regard to the quoted

11   statements allegedly appearing in a third-party publication and whether they have been accurately

12   quoted, and therefore deny the same.

13           51.      MileHighOnTheCheap.com ran a similar story with a similar picture, adding,

14           "Famished frugal diners can pair the bargain beverage with the chain's popular **2 for $22**
         meal for maximum savings. It's not often you can get an appetizer, two entrées and
15       drinks for under $30, so the two deals combined make for a perfect, low-cost "date
         night."
16

17   **RESPONSE:** Defendants are without information or knowledge with regard to the quoted

18   statements allegedly appearing in a third-party publication and whether they have been accurately

19   quoted, and therefore deny the same.

20           52.      Other publications highlighted the same story and message (as intended by the

21   Applebees defendants), go to Applebees to drink a Vampire cocktail for $1and order food while

22   you're there. Other publications that repeated the same intentional infringing message include,

23   Delish.com, Vinepair.com, Myrecipes.com, News.meredithlmg.com, DoYouRemember.com,

24   PopSugar.com, Rare.us, Elitedaily.com, and bustle.com, and many more.

25   **RESPONSE:** Defendants are without information or knowledge with regard to the purported

26   statements allegedly appearing in third-party publications and whether they have been accurately

27   alleged, and therefore deny the same.



53.     On October 3, 2019, the national newspaper USAToday.com wrote about it and featured a video showing off defendants' infringing Vampire cocktail.

**RESPONSE:** Defendants are without information or knowledge with regard to the purported statements allegedly appearing in a third-party publication and whether they have been accurately alleged, and therefore deny the same.

54.     Defendants made its video featuring its infringing Vampire cocktail available on its Facebook page, on its Applebees website, on its Instagram pages and on YouTube and more places.

**RESPONSE:** The Dine Defendants state that they promoted vampire cocktails on or around October 1 – October 31, 2019, on the Applebee's website and via social media. Defendants deny all other allegations in this paragraph.

55.     Defendants infringing Vampire cocktail was shown on both Sacramento's ABC 10, and San Francisco's KRON4.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

56.     ABC 10's website has a link to defendant's twitter page showing the following infringing image:



**RESPONSE:** Defendants are without information or knowledge as to the alleged content of a third-party website, and therefore deny the same.

57.     Publicity about defendants' infringing cocktail appeared in numerous other outlets, including radio outlets, such as https://alt1037dfw.radio.com and many more presently unknown.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

58.     According to the press release sent out by defendant Patrick Kirk with the approval of defendants including defendants Cywinski, Stephen P. Joyce and Gregg Flynn,

> "Applebee's Drink of the Month is a Halloween-themed punch is "a freaky tiki rum punch. They're calling it a Vampire. The purple liquid is served in a glass mug with plastic vampire teeth and a blood-red cherry."

[Thrillist, October 1, 2019 article]

**RESPONSE:** Defendants are without information or knowledge with regard to the quoted statements allegedly appearing in a third-party publication and whether they have been accurately quoted, and therefore deny the same. Defendant Patrick Kirk denies that he "sent out" an Applebee's press release. Defendants John Cywinski, Stephen P. Joyce and Gregg [sic] Flynn deny that they "approved" an Applebee's press release.

59.     Defendants Applebees' Facebook page that features the infringing cocktail shows that it is followed by approximately six million people.

**RESPONSE:** The Dine Defendants state that the Applebee's Facebook page currently has approximately 5,938,030 followers. The non-Dine defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to any other allegations in this paragraph.

60.     Applebees' Twitter page is followed by approximately 632,000 followers. Defendants posted an infringing video featuring the infringing Vampire Cocktail that had as of this writing over 323,000 views. The video starts out with a story about the infringing Vampire cocktail and asks its followers to complete the incomplete story told on the video.

**RESPONSE:** The Dine Defendants state that Applebee's Twitter account currently has approximately 633,400 followers. The Dine Defendants further state that a video promoting the vampire cocktail was posted to Applebee's Twitter account on or around October 10, 2019, and currently has approximately 325,500 views. The non-Dine defendants are without information or

NEAL, GERBER & EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to all other allegations in this paragraph.

61.     Images of the infringing cocktail were also posted on Defendants' Instagram page which has 561,000 followers.

**RESPONSE:** The Dine Defendants state that Applebee's Instagram account currently has approximately 589,000 followers, and that images of the vampire cocktail were posted to the Applebee's Instagram account on or around October 1-31, 2019. The non-Dine defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to all other allegations in this paragraph.

62.     The Applebee Defendants continue to unlawfully promote the $1 Vampire Cocktail on the home page of its website, on its Facebook Pages, on Instagram and elsewhere on social media. They unlawfully released a cartoon ad featuring the $1 Vampire Cocktail, and they have unlawfully placed signage prominently outside the doors of their restaurants promoting the $1 Vampire Cocktail. The signs on the window promote the $1 Vampire cocktail with a goofy picture of a vampire as in the Facebook campaign. The $1 Vampire cocktail comes with hokey teeth. Simply put the Applebee defendants' marketing of the $1 Vampire cocktail is the antithesis of Plaintiff's marketing of Vampire Wine and its other Vampire products, including its bloody mary, as upscale great tasting product. YouTubers are saying they drank 3 Vampires (referring to defendant's infringing drink.)

**RESPONSE:** The Dine Defendants state that the seasonal vampire cocktail was promoted on the Applebee's website and social media during October 2019, and that one or more advertisements featured a cartoon. The Dine Defendants further state that signage promoting the vampire cocktail was present in participating Applebee's restaurants during the seasonal promotion in October 2019. The non-Dine defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to all other allegations in this paragraph.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

- 19 -

63.     Moreover, Plaintiff observed that Applebees also sells a cocktail called "Dracula's juice" made from rum, which it sells for $7.99. This drink infringes and is confusingly similar to Plaintiff's trademarks.

**RESPONSE:** The Dine Defendants state that certain Applebee's restaurants have offered a seasonal cocktail with the name "Dracula's Juice." The non-Dine defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to all other allegations in this paragraph.

**C.     The Obvious Intentional and Willful Infringement by all the defendants who refused to stop infringing plaintiff's marks.**

64.     On Friday morning, October 18, 2019, defendants Stephen P. Joyce, Patrick Kirk, John Cywinski and Greg Flynn each received, via federal express, a draft version of this complaint complaining about their unlawful conduct and seeking damages and injunctive relief.

**RESPONSE:** Defendants Stephen P. Joyce, Patrick Kirk, John Cywinski and Greg Flynn state that they received a draft version of this Complaint on or around October 18, 2019. Denied with regard to any other allegations in this paragraph. The remaining Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

65.     Notwithstanding the notice of infringement, all of the defendants refused to stop and continue to infringe. The home page of the Applebees website still prominently features the infringing Vampire Cocktail drink. The infringing drink is still featured on defendants' social media, and their promotion and sales of the infringing Vampire cocktail still continues as of this writing.

**RESPONSE:** Denied by all Defendants.

66.     On Friday October 25, 2019, Plaintiff received notice from a business associate in the beverage business that he and his wife (who's also in the beverage business) saw a large Applebees Vampire billboard along Interstate 5 near Irvine. This contact wondered if Plaintiff had done some kind of business deal with Applebees.

**RESPONSE:** Defendants are without information or knowledge with regard to statements allegedly made by third parties to Plaintiff, and therefore deny the same.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

67.     Subsequently, Plaintiff googled the terms "Applebees Vampire billboard" and discovered that defendants are unlawfully advertising their unauthorized association on billboards elsewhere as well, including in San Francisco, where an article indicated that defendants are sharing a billboard with a contentious political matter.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

68.     Plaintiff conducted a google search for the terms "Applebees Vampire" and found approximately 160 hits for magazines, newspapers, radio shows, television shows that published the story of defendants coming out with their illegal Vampire cocktail. A copy of this search result is attached as Exhibit A. The combination of press, advertising and promotion is obviously detrimental to Plaintiff's brands but defendants refused to stop even knowing about the harm they continue to cause.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

69.     Plaintiff markets its brands through a national network of wholesalers, and via the website: www.vampire.com. Vampire wine sells for anywhere between $10 to $15 per bottle nationally at retail stores. Vampire wine is also available in bars and restaurants on wine lists.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

70.     Plaintiff and its associates have worked hard to insure that they put the best wine in the bottle as possible. Over the last few years, Plaintiff's Vampire family of wines have received some great reviews and have won Gold Medals, including Gold Medals at the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, Vampire Pinot Noir, a Gold Medal and 92 Rating from the Los Angeles International Wine & Spirits Competition awarded to Vampire Cabernet Sauvignon, Gold Medals at the Texas International Rodeo Wine Competition, and 92 ratings for its highest end Trueblood Cabernet Sauvignon.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

71.     Plaintiff has spent substantial amounts of time and money building up, advertising, and promoting its brands. By virtue of the popularity of its brands, its advertising, promotion, and sales, plus the popularity of its websites, including vampire.com, Plaintiff has built up and own extremely valuable goodwill which is symbolized by Plaintiff's various marks.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

72.     Defendants intentional wrongful acts are harming Plaintiff's brands reputation and are diluting the brands and are disparaging.

**RESPONSE:** Denied.

73.     If defendants are not stopped from marketing food and beverages using Plaintiff's Vampire mark and/or Dracula mark or a mark confusingly similar to Vampire (or Dracula), then consumers will likely be confused about the source and origin of defendants' products and services and mistakenly conclude that defendants' products or services are produced by, or associated with Plaintiff and/or its licensees.

**RESPONSE:** Denied by all Defendants.

74.     Alternatively, if defendants are not stopped from marketing food and beverages using Plaintiff's Vampire mark and/or Dracula mark or a mark confusingly similar to Vampire (or Dracula), then consumers will likely be confused about the source and origin of Plaintiff's (or its licensees') products and services and mistakenly conclude that Plaintiff's (or its licensees') products or services are produced by, or associated with defendants.

**RESPONSE:** Denied by all Defendants.

## COUNT I
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

75.     Plaintiff realleges the allegations in paragraphs 1 through 74.

**RESPONSE:** Defendants maintain and incorporate by reference their answers to paragraphs 1-74 as if set forth fully herein.

76.     Defendants have large resources with which to market and advertise its goods and services. Defendants' resources vastly exceed those of Plaintiff. Consequently, marketing and advertising efforts by Defendants are likely to mislead consumers to believe that Plaintiff's goods

and services may be unauthorized use of trademarks that Applebees owns. If defendants are able to continue their wrongful acts, consumers are likely to be misled to believe that Plaintiff is misusing the *VAMPIRE mark (and/or Dracula* mark).

**RESPONSE:** Denied by all Defendants.

77.     Also, Defendants' use of the word VAMPIRE (and Dracula) as cocktails, so closely resembles Plaintiff's products and services (including Plaintiff's Vampire Gourmet Bloody Mary Cocktail) that the public is likely to be confused and deceived, and to assume erroneously that defendants' goods are those of Plaintiff, or that defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

**RESPONSE:** Denied by all Defendants.

78.     Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by defendants.

**RESPONSE:** Admitted by all Defendants.

79.     Plaintiff has no control over the nature and quality of the goods and services offered and sold by defendants or its licensees. Any failure, neglect, or default by defendants or its licensees in providing such products or services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's efforts to continue to protect its outstanding reputation and preventing Plaintiff from further building its reputation. Said failure, neglect, or default will result in loss of revenue by Plaintiff, and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the VAMPIRE mark, all to the irreparable harm of Plaintiff.

**RESPONSE:** Admitted that Plaintiff has no control over the nature and quality of the goods and services offered and sold by Defendants or their licensees, where applicable. Denied with regard to all other allegations in this paragraph.

80.     In fact, the Applebees defendants sale of a Vampire Cocktail for $1 interferes with and hampers Plaintiff's ability to market and promote its wines. Plaintiff's Vampire Wine normally sells in restaurants for between $8 and $10 per glass, so a $1 Vampire cocktail cheapens the

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

perception of Plaintiff's wines. Similarly, a $1 Vampire cocktail cheapens the perception of Plaintiff's Vampire gourmet bloody mary making it harder for Plaintiff to market and promote its bloody mary.

**RESPONSE:** Denied by all Defendants.

81.     Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name VAMPIRE (and Dracula) and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and/or sold, products and services using the VAMPIRE (and Dracula) mark through persons not authorized, employed by, or associated in any way with Plaintiff and have used the aforementioned trade name and trademark as a false designation and false representation for food products.

**RESPONSE:** Denied by all Defendants.

82.     None of defendants' activities complained of in this complaint have been authorized by Plaintiff, and such unauthorized use by Defendants of Plaintiff's trademarks and/or trade names in interstate commerce, commerce substantially affecting interstate commerce in this district, and elsewhere throughout the United States, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names, and such activities are likely to cause confusion, mistakes, and to deceive the public at large.

**RESPONSE:** Admitted that none of Defendants' activities complained of in this Complaint have been authorized by Plaintiff. Denied with regard to all other allegation in this paragraph.

83.     Upon information and belief, Defendants have acted with the unlawful purpose of:

a.     Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

b.     Soliciting Plaintiff's customers and/or potential customers, attempting to sell, and selling to such customers and potential customers, goods and services marketed under the VAMPIRE mark (and Dracula mark) through persons not authorized by, employed by, or associated in any way with Plaintiff;

c.     Inducing others to infringe Plaintiff's trademarks and trade names; and

d.      Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

**RESPONSE:** Denied by all Defendants.

84.      Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

**RESPONSE:** Denied by all Defendants.

85.      If Defendants are allowed to continue marketing and selling the accused goods and services, Plaintiff will be damaged as alleged in this complaint, and the Defendants will profit thereby. Furthermore, unless the Court permanently enjoins Defendants conduct as alleged in this complaint, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

**RESPONSE:** Denied by all Defendants.

86.      Defendants have hijacked Plaintiff's trademark. Hijacking Plaintiff's Vampire trademark improved the relevance of ads on searches that included "Vampire" keywords and made defendants' promotion more interesting. It led to more people hearing about Applebees, leading them to come in and try the $1 infringing drink and buy some food at regular prices. Highjacking Plaintiff's mark lowered defendants costs to advertise while improving defendants' sales and profits.

**RESPONSE:** Denied by all Defendants.

87.      Defendants' aforementioned acts and conduct is being done willfully and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Plaintiff is therefore entitled to treble damages arising therefore, disgorgement of defendants' profits, as well as reimbursement of Plaintiff's attorneys' fees and costs.

**RESPONSE:** Denied by all Defendants.

88.     The intentional nature of defendant's acts (particularly defendants Flynn Restaurant Group and Greg Flynn who previously infringed upon Plaintiff's Vampire Taco mark by selling Vampire Burritos and who obviously knew of Plaintiff) makes this an exceptional case under 15 U.S.C. §1117(a).

**RESPONSE:** Denied by all Defendants.

89.     The intentional nature of defendant's acts and conduct makes this a case suitable for an award of Three Times Defendants' profits plus attorneys fees.

**RESPONSE:** Denied by all Defendants.

90.     *Furthermore, since the Applebee defendants are using Plaintiff's Vampire mark as a loss leader to drive people into their restaurants to eat, the Applebee defendants ought to pay the profits from their food sales to Plaintiff as well.*

**RESPONSE:** Denied by all Defendants.

## COUNT II
## <u>VIOLATION OF LANHAM ACT 15 U.S.C. §1114</u>
### (Against All Defendants)

91.     Plaintiff repeats each allegation contained in paragraphs 1 through 90 as though set forth herein at length.

**RESPONSE:** Defendants maintain and incorporate by reference their answers to paragraphs 1-90 as if set forth fully herein.

92.     Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's registered marks.

**RESPONSE:** Denied by all Defendants. Defendants further object to "Plaintiff's registered marks" as vague with regard to which marks Plaintiff alleges have been "wrongfully exploited."

93.     Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, to be deceived, and to erroneously assume that Defendants' marketing and sale of their VAMPIRE (and Dracula) branded goods and services, as packaged, advertised and promoted, are those of Plaintiff, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff, all to Plaintiff's detriment and irreparable damage.

**RESPONSE:** Denied by all Defendants.

94.     Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff. Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

**RESPONSE:** Admitted that Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff. Defendants object to the allegation "Plaintiff has not approved any of the goods or services offered or sold by Defendants" as vague, and therefore deny the same.

95.     Defendants aforesaid infringing conduct has been willful and with an intent to ride on, and/or step on and demolish, the goodwill Plaintiff has worked hard to develop. Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their Vampire branded cocktails and restaurant services will hinder the prospects of future commercial success of Plaintiff's VAMPIRE family of brands, including its further foray into the food, cocktail and restaurant space. Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

**RESPONSE:** Denied by all Defendants.

**COUNT III**
**VIOLATION OF LANHAM ACT 15 U.S.C. §1125c**
**(Against All Defendants)**

96.     Plaintiff repeats each allegation contained in paragraphs 1 through 95 as though set forth herein at length.

**RESPONSE:** Defendants maintain and incorporate by reference their answers to paragraphs 1-95 as if set forth fully herein.

97.     Plaintiff's Vampire family of brands have appeared on The View, Anderson Cooper, CNN Headline News, Entertainment tonight, MTV's Viva La Bam, The Food Channel, A & E, and have been written up in widely circulated magazines such as Star Magazine, Shape, Maxim, InStyle, Elle, Spin, Rolling Stone, Marie Claire, Cosmo Girl, The Wine Enthusiast, and in regional newspapers such as the LA Times, the NY Times, the Houston Chronicle, and others, and as such have developed a fame all of their own catapulting the Vampire brand into the category of a famous mark.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

- 27 -

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

98.     Plaintiff's associates and predecessors in interest periodically work with Hollywood film companies and engage in mutually beneficial promotions. For example, Plaintiff's products have been found in the Blade films (starring Wesley Snipes) and HBO's Trueblood Series, and Plaintiff has done promotions connecting its Vampire family of brands to films such as the Underworld series of films (starring Kate Beckinsale) in addition to Blade Trinity, and it has had its wines featured and poured at film premiers, including such as Quentin Tarrantino's *Dusk Til' Dawn* and *Dark Shadows* (starring Johnny Depp.) A sampling of just some of the press talking about Plaintiff's Vampire family of brands is attached as Exhibit B.

**RESPONSE:** Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same.

99.     Plaintiff fears that defendants' marketing excursions into the world of vampires using the word Vampire as a mark for goods and services will cause consumers to believe that Plaintiff's Vampire branded wines and bloody mary cocktail (and other goods and services) are not of as high quality as they actually are and will tarnish, dilute and otherwise damage the reputation of Plaintiff's goods and services. This will lead to irreparable harm to Plaintiff's goodwill, reputation, and sales.

**RESPONSE:** With regard to Plaintiff's mental state, Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to all other allegations in this paragraph.

100.     Plaintiff also fears that the disparaging nature of defendant's silly marketing will interfere with Plaintiff's ability to attract those producing serious first class Hollywood films to want to do future joint promotions with Plaintiff and its family of Vampire brands.

**RESPONSE:** With regard to Plaintiff's mental state, Defendants are without information or knowledge sufficient to admit or deny the allegations of this paragraph, and therefore deny the same. Denied with regard to all other allegations in this paragraph.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

- 28 -

**COUNT IV**
**UNFAIR COMPETITION – COMMON LAW, AND CALIFORNIA BUSINESS &**
**PROFESSIONS CODE §§ 17200 et seq.**
**(Against All Defendants)**

101.    Plaintiff repeats each allegation contained in paragraphs 1 through 100 as though set forth herein at length.

**RESPONSE:** Defendants maintain and incorporate by reference their answers to paragraphs 1-100 as if set forth fully herein.

102.    Defendants have engaged in unfair competition perpetrated against Plaintiff by reason of the conduct alleged herein.

**RESPONSE:** Denied by all Defendants.

103.    The unlawful and unfair conduct is injuring the goodwill of Plaintiff and its lawful licensees.

**RESPONSE:** Denied by all Defendants.

104.    Defendants are liable for the unfair competition, and/or are liable for aiding and abetting such conduct.

**RESPONSE:** Denied by all Defendants.

105.    By this conduct, Plaintiff has directly suffered injuries and each Defendant has been unjustly enriched.

**RESPONSE:** Denied by all Defendants.

106.    Plaintiff is entitled to restitution, the recovery of damages, and the recovery of the profits earned by Defendants by virtue of their conduct.

**RESPONSE:** Denied by all Defendants.

107.    As a consequence of the unfair competition by Defendants, Plaintiff is suffering irreparable injury, by reason of which such conduct should be enjoined.

**RESPONSE:** Denied by all Defendants.

108.    Plaintiff is entitled to reasonable attorneys' fees.

**RESPONSE:** Denied by all Defendants.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

109.    Plaintiff is informed and believes, and on that basis alleges, that the aforementioned conduct of Defendants is willful, oppressive, fraudulent, and malicious, and Plaintiff is therefore entitled to punitive damages.

**RESPONSE:** Denied by all Defendants.

### COUNT V
### UNFAIR COMPETITION – COMMON LAW, CALIFORNIA
### BUSINESS & PROFESSIONS CODE §§ 17500 et seq.
### (Against All Defendants)

110.    Plaintiff repeats each allegation contained in paragraphs 1 through 109 as though set forth here at length.

**RESPONSE:** Defendants maintain and incorporate by reference their answers to paragraphs 1-109 as if set forth fully herein.

111.    Defendants' use of Plaintiff's family of VAMPIRE brands and trademarks misrepresents the nature, characteristics, identity, and source or sponsorship of Defendants' goods and services, constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, inter alia, California Business and Professions Code §§17500 et seq. and California common law.

**RESPONSE:** Denied by all Defendants.

112.    Defendants' use of Plaintiff's family of VAMPIRE brands and trademarks is likely to deceive and will continue to deceive the consuming public. Defendants knew, recklessly disregarded, or reasonably should have known that such packaging, advertising, marketing, and promotion was untrue and/or misleading.

**RESPONSE:** Denied by all Defendants.

113.    As a result of the conduct described above, Defendants have been and/or will be unjustly enriched at the expense of Plaintiff and the general public. The interests of the general public and Plaintiff are, therefore, closely related.

**RESPONSE:** Denied by all Defendants.

114.    Defendants have been unjustly enriched, among other things, by the receipt of sales revenues from consumers who mistakenly thought that they were purchasing Plaintiff's VAMPIRE

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

goods and services, but instead were purchasing Defendants' goods and services which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, characteristics, identity, and source or sponsorship of the goods.

**RESPONSE:** Denied by all Defendants.

115.    Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff, on behalf of itself and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendants immediately to cease such acts of unfair competition and false advertising, and enjoining Defendants from continuing to market, promote, advertise, offer for sale, and sell, and advertise goods or services using the Vampire mark. Plaintiff additionally requests an order disgorging Defendants' ill-gotten gains and restitution of all monies wrongfully acquired by Defendants by means of its acts of unfair competition and false advertising. Plaintiff further requests they be paid interest and attorneys' fees.

**RESPONSE:** Defendants state that the allegations in this paragraph speak for themselves. Denied that Plaintiff is entitled to any relief.

## FIRST AFFIRMATIVE DEFENSE – FAIR USE

1.    On information and belief, vampiric creatures, which are said to subsist by feeding on the essence (usually in the form of blood) of the living, have been a part of folklore for millennia.

2.    On information and belief, the first published appearance of the English word "vampyre" dates to 1734.

3.    On information and belief, the current common depiction of a vampire figure – a pale, gaunt human figure with fangs that often wears a cloak or a cape – was popularized in the early 19th century.

4.    On information and belief, vampires have been a tremendously popular subject for works of fiction, and indeed has spawned its own genre. The first successful vampire story was "The Vampyre," by the English writer John Polidori, published in 1819. Bram Stoker's novel "Dracula," published in 1897, remains the seminal work in the genre, and the Dracula character has been the basis for dozens of films, from "Nosferatu" in 1922 to "Bram Stoker's Dracula" in 1992. More recently, of course, the "Twilight" series of vampire-centered books has gained immense

popularity worldwide, selling over 120 million copies. The "Twilight" books were adapted into a film series that has grossed over $3.3 billion worldwide.

5.      On information and belief, vampires are commonly associated with Halloween celebrations, for example, as a common decorative element, party theme, and/or costume choice for trick-or-treaters and partygoers.

6.      On information and belief, "vampire" is also an exceedingly commonly used term to describe drinks with a "blood" red or purple color. A Google search on "vampire cocktail" returns more than 20 million results and includes recipes for a "Vampire Vodka Cocktail" (featured on Martha Stewart's website), a "Vampire's Kiss Martini" (featured on Food.com), a "Halloween Vampire Cocktail," a "Vampire Blood Cocktail," a "Vampire Inspired Cocktail," a "Vampire's Drip Cocktail," a "Bloody Vampire Cocktail," among countless others. *See* Exh. A

7.      On information and belief, vampire-themed promotions, including drink promotions, are common in the restaurant industry. Among numerous examples, GloriaFood.com advises that restaurants could "use plenty of Halloween restaurant promotions to attract customers, like: *2-for-1 Vampire punches*" (linking to recipe for "The Vampire Punch"; emphasis in original) and "vampire blood" shots in laboratory tubes or syringes. *See* Exh. B. POS Sector, a vendor of restaurant management software, notes that "Any food or drink with red colors could be used. It is almost mandatory to have red tomato soup on your menu that you can named for Halloween as a 'vampire blood.'" *Id.* The Lightspeed restaurant blog advises that restaurants "can run a special menu through the rest of October, or just for the Halloween weekend with pricing per item. Don't forget cocktails as well … grenadine can be used to simulate the look of blood for layered drinks or shots, and cranberry juice can add a crimson tone to vampire-themed drinks." *Id.*

8.      Participating Applebee's restaurants frequently offer special drink promotions that are seasonal and/or tied to particular holidays.

9.      On or around October 1-31, 2019, participating Applebee's restaurants engaged in a Halloween-themed promotion that involved, among other elements, a "vampire" cocktail. The cocktail was made with a mix of rum and various tropical fruit juices and was purple in color. The cocktail was garnished with a cherry and a set of plastic vampire fangs.

10.     The Applebee's Halloween promotion used the term "vampire" to describe the color of its cocktail, the garnish of plastic fangs, and the cocktail's connection to the seasonal promotion.

11.     Accordingly, use of the term "vampire" by any and all of the Defendants was descriptive and not as a trademark.

12.     Such use by any and all of the Defendants was in good faith.

13.     Use by any and all of the Defendants of the term "vampire" therefore constituted classic fair use and cannot give rise to liability for any of Plaintiff's claims.

## COUNTERCLAIMS

Counterclaimant Applebee's Services, Inc. ("Counterclaimant") alleges, upon knowledge as to its own acts and upon information and belief as to the acts of others, as follows:

## FIRST COUNTERCLAIM

### Declaratory Judgment of Invalidity and Non-Infringement and Order for Cancellation of Reg. No. 5444375

1.     Defendant Applebee's Services, Inc. brings this counterclaim for a Declaratory Judgment that (a) Plaintiff and/or any and all of its predecessors in interest (hereafter, "Plaintiff") has no protectable rights in the VAMPIRE mark in connection with the goods covered by US trademark Reg. No. 5444375 (the "Registration") and (b) Defendants therefore have not and could not have infringed Plaintiff's purported rights, and an Order that the Registration be cancelled in due course by the United States Patent and Trademark Office.

### I.     JURISDICTION AND VENUE

2.     This counterclaim arises under the Lanham Act, particularly 15 USC § 1127. Jurisdiction is conferred on this Court by 15 USC § 1121(a), and by 28 USC § 1338(a), in that this case arises under the trademark laws of the United States. Venue is proper in this District under 28 U.S.C. §§ 1391(a) and (b) because Plaintiff/Counter-Defendant resides in this District.

### II.     THE PARTIES

3.     Defendant/Counterclaimant Applebee's Services, Inc. is a Kansas corporation headquartered in Glendale, California.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

- 33 -

4.      On information and belief, Plaintiff/Counter-Defendant Vampire Family Brands, LLC is a Delaware limited liability company with its main business office located in Los Angeles County, California.

### III.      MATERIAL FACTS

5.      On information and belief, Counter-Defendant does not currently offer or market pre-mixed or prepared alcoholic beverages in connection with the VAMPIRE mark, and indeed has never sold such beverages in connection with the mark.

6.      On information and belief, Counter-Defendant's use of the VAMPIRE mark in connection with the goods covered by the Registration, if any, was limited to a small number of shipments of test products and a handful of sample tastings, all of which occurred in or around 2016 - 2018.

7.      On information and belief, these shipments consisted of test cans that had been relabeled to reflect Counter-Defendant's branding, having originally been produced and branded by Counter-Defendant's former supplier under a different mark.

8.      On information and belief, the cans contained a bloody mary cocktail produced according to a recipe developed by the former supplier and originally intended for sale under the former supplier's mark.

9.      On information and belief, the cans were intended for distribution in Europe and were 330 ml size, whereas in the US 355 ml (12 ounces) cans are used. This created a 25 ml disparity between the amount of liquid in the can and the amount stated on the label.

10.      On information and belief, a first shipment consisted of 20 cases of 24 cans (480 cans total) rewrapped by hand with Counter-Defendant's label.

11.      On information and belief, a second shipment consisted of 50 cases of 24 cans (1,200 cans total) rewrapped by hand with Counter-Defendant's label.

12.      On information and belief, these shipments occurred between May 2016 and January 13, 2017.

13.      On information and belief, the 1,680 cans from these shipments were used to conduct free sample tastings.

14.     On information and belief, a third shipment consisted of 911 cases of 24 cans (21,864 cans total).

15.     On information and belief, the cans in the third shipment had been wrapped with Plaintiff's label by machine.

16.     On information and belief, Counter-Defendant was dissatisfied with the appearance of the cans in the third shipment, and particularly with the fact that traces of the original branding were still visible.

17.     On information and belief, Counter-Defendant was also dissatisfied with the taste of the product, which Counter-Defendant believed had deteriorated as a result of the laser process used to relabel the cans by machine.

18.     On information and belief, Counter-Defendant believed that the laser process cooked the contents of the cans, so the product delivered didn't have the same taste as the first hand-wrapped batch.

19.     On information and belief, Counter-Defendant had shipped approximately 240 cases of bad tasting product to distributors before discovering the problem.

20.     On information and belief, Counter-Defendant believed it lost good will and time due to the poor production practices, which resulted in an improper taste.

21.     On information and belief, Counter-Defendant believed it may be impossible to recover its reputation with the affected distributors.

22.     On information and belief, in light of the low quality nature of the product and packaging, Counter-Defendant opted not to order additional shipments or to bring the product to market through the intended distribution channels. Instead, Counter-Defendant hoped to liquidate its small inventory through a discount retailer.

23.     On information and belief, a Certificate of Label Approval from the Alcohol and Tobacco Tax and Trade Bureau is required to lawfully bottle and distribute labeled beverage alcohol products in the United States.

24.     On information and belief, Counter-Defendant never had permission from the Alcohol and Tobacco Tax and Trade Bureau to relabel the cans with its branding.

25.     On information and belief, in August 2018, the Alcohol and Tobacco Tax and Trade Bureau informed Counter-Defendant that the relabeled cans must be destroyed or surrendered for destruction.

26.     On information and belief, Counter-Defendant surrendered its remaining inventory of relabeled cans for destruction, and therefore, none of the inventory was ever offered for sale or sold to retailers or consumers.

27.     On information and belief, since destroying its inventory, Counter-Defendant has not produced, caused to be produced, or otherwise acquired or owned any bloody mary or other cocktail product packaged under the VAMPIRE mark.

28.     On information and belief, Counter-Defendant ceased all use of the VAMPIRE mark in connection with the goods covered by the Registration at least as early as August 2018, and likely earlier.

## COUNT I

### Declaratory Judgment of Invalidity of Reg. No. 5444375

29.     Counterclaimant re-alleges and incorporates herein paragraphs 1 through 28 of this Counterclaim.

30.     Counter-Defendant's activities as set forth above do not constitute lawful use in commerce pursuant to 15 USC § 1127 because Counter-Defendant's products were at all times in violation of Alcohol and Tobacco Tax and Trade Bureau labeling requirements, and therefore failed to constitute legal use of the mark in commerce. Counter-Defendant's activities therefore could not give rise to trademark rights in the VAMPIRE mark in connection with the goods covered by the Registration.

31.     In the alternative, Counter-Defendant's activities as set forth above, without more, did not constitute bona fide use of a mark in the ordinary course of trade pursuant to 15 USC § 1127, and therefore did not give rise to continuing rights in the VAMPIRE mark in connection with the goods covered by the Registration.

32.     In the alternative, on information and belief, Counter-Defendant has ceased use of the VAMPIRE mark in commerce in connection with the goods covered by the Registration and

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

- 36 -

does not intend to resume such use, but rather seeks to improperly maintain the registration solely for the purpose of reserving a right in the mark so as to prosecute this lawsuit (and potentially others). Counter-Defendant thereby abandoned the VAMPIRE mark in connection with the goods covered by the Registration.

33.     The Registration is therefore void and unenforceable.

## COUNT II

### Declaratory Judgment of Non-infringement

34.     Counterclaimant re-alleges and incorporates herein paragraphs 1 through 33 of this Counterclaim.

35.     Counter-Defendant does not have any protectable rights in the VAMPIRE mark in connection with the goods covered by the Registration, and therefore Defendants could not possibly have violated Plaintiff's rights.

36.     Defendants have not infringed or otherwise violated any protectable right of Counter-Defendant.

37.     In the alternative, any use of the term "vampire" by any of the Defendants constituted classic fair use.

38.     On information and belief, vampiric creatures, which are said to subsist by feeding on the essence (usually in the form of blood) of the living, have been a part of folklore for millennia.

39.     On information and belief, the first published appearance of the English word "vampyre" dates to 1734.

40.     On information and belief, the current common depiction of a vampire figure – a pale, gaunt human figure with fangs that often wears a cloak or a cape – was popularized in the early 19th century.

41.     On information and belief, vampires have been a tremendously popular subject for works of fiction, and indeed has spawned its own genre. The first successful vampire story was "The Vampyre," by the English writer John Polidori, published in 1819. Bram Stoker's novel "Dracula," published in 1897, remains the seminal work in the genre, and the Dracula character has been the basis for dozens of films, from "Nosferatu" in 1922 to "Bram Stoker's Dracula" in 1992.

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

More recently, of course, the "Twilight" series of vampire-centered books has gained immense popularity worldwide, selling over 120 million copies. The "Twilight" books were adapted into a film series that has grossed over $3.3 billion worldwide.

42.     On information and belief, vampires are commonly associated with Halloween celebrations, for example, as a common decorative element, party theme, and/or costume choice for trick-or-treaters and partygoers.

43.     On information and belief, "vampire" is also an exceedingly commonly used term to describe drinks with a "blood" red or purple color. A Google search on "vampire cocktail" returns more than 20 million results and includes recipes for a "Vampire Vodka Cocktail" (featured on Martha Stewart's website), a "Vampire's Kiss Martini" (featured on Food.com), a "Halloween Vampire Cocktail," a "Vampire Blood Cocktail," a "Vampire Inspired Cocktail," a "Vampire's Drip Cocktail," a "Bloody Vampire Cocktail," among countless others. *See* Exh. A

44.     On information and belief, vampire-themed promotions, including drink promotions, are common in the restaurant industry. Among numerous examples, GloriaFood.com advises that restaurants could "use plenty of Halloween restaurant promotions to attract customers, like: *2-for-1 Vampire punches*" (linking to recipe for "The Vampire Punch"; emphasis in original) and "vampire blood" shots in laboratory tubes or syringes. *See* Exh. B. POS Sector, a vendor of restaurant management software, notes that "Any food or drink with red colors could be used. It is almost mandatory to have red tomato soup on your menu that you can named for Halloween as a 'vampire blood.'" *Id.* The Lightspeed restaurant blog advises that restaurants "can run a special menu through the rest of October, or just for the Halloween weekend with pricing per item. Don't forget cocktails as well … grenadine can be used to simulate the look of blood for layered drinks or shots, and cranberry juice can add a crimson tone to vampire-themed drinks." *Id.*

45.     Participating Applebee's restaurants frequently offer special drink promotions that are seasonal and/or tied to particular holidays.

46.     On or around October 1-31, 2019, participating Applebee's restaurants engaged in a Halloween-themed promotion that involved, among other elements, a "vampire" cocktail. The

cocktail was made with a mix of rum and various tropical fruit juices and was purple in color. The cocktail was garnished with a cherry and a set of plastic vampire fangs.

47.     The Applebee's Halloween promotion used the term "vampire" to describe the color of its cocktail, the garnish of plastic fangs, and the cocktail's connection to the seasonal promotion.

48.     Accordingly, use of the term "vampire" by any and all of the Defendants was descriptive and not as a trademark.

49.     Such use by any and all of the Defendants was in good faith.

50.     Use by any and all of the Defendants of the term "vampire" therefore constituted classic fair use and cannot give rise to liability for any of Plaintiff's claims.

## **REQUEST FOR RELIEF**

WHEREFORE, Defendant/Counterclaimant Applebee's Services, Inc. prays for judgment as follows:

1.     That the Court declare that Plaintiff has no protectable rights in the VAMPIRE mark with regard to "Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Prepared alcoholic cocktail," and that Defendants did not infringe any of Plaintiff's purported rights in the VAMPIRE mark with regard to such goods;

2.     That the Court dismiss all of Plaintiff's claims with prejudice with respect to Registration No. 5444375 and Plaintiff's purported rights in the VAMPIRE mark in connection with "Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Prepared alcoholic cocktail";

3.     That the Court declare that Registration No. 5444375 is invalid and unenforceable;

4.     That the Court order that Registration No. 54443375 be canceled by the United States Patent and Trademark Office in due course;

5.     That the Court declare that this is an exceptional case and awarding Defendant/Counterclaimant its costs, disbursements, and attorneys' fees, pursuant to 15 U.S.C. § 1117(a); and

///

///

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1

1

      6.      That the Court order such other relief as the Court may deem just.

2

DATED: December 22, 2020      MICHAEL G. KELBER

3

                              ANDREW S. FRAKER
                              NEAL, GERBER & EISENBERG LLP

4

5

                          By: /s/Michael G. Kelber

6

                              Michael G. Kelber

7

                              Attorneys for Defendants
                              APPLEBEES RESTAURANTS, LLC,

8

                              APPLEBEES SERVICES, INC., DINE
                              BRANDS GLOBAL INC., STEPHEN

9

                              P JOYCE, PATRICK KIRK, JOHN
                              CYWINSKI, FLYNN RESTAURANT

10

                              GROUP, GREG FLYNN, APPLE
                              AMERICAN, RMH FRANCHISE CORP,

11

                              DOHERTY, ENTERPRISES, SSCP
                              MANAGEMENT, APPLE

12

                              INVESTORS GROUP; APPLE AB
                              ENTERPRISES; APPLE NORTH INC; AND

13

                              APPLE CORE ENTERPRISES INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Neal, Gerber &
Eisenberg LLP
Attorneys at Law
Chicago

28

1

## JURY DEMAND

2          Defendants/Counterclaimant demands a trial by jury on all issues so triable.

3   DATED: December 22, 2020          MICHAEL G. KELBER
                                       ANDREW S. FRAKER
4                                      NEAL, GERBER & EISENBERG LLP

5

6                                      By:  /s/Michael G. Kelber

7                                          Michael G. Kelber
                                           Attorneys for Defendants
8                                          APPLEBEES RESTAURANTS, LLC,
                                           APPLEBEES SERVICES, INC., DINE
9                                          BRANDS GLOBAL INC., STEPHEN
                                           P JOYCE, PATRICK KIRK, JOHN
10                                         CYWINSKI, FLYNN RESTAURANT
                                           GROUP, GREG FLYNN, APPLE
11                                         AMERICAN, RMH FRANCHISE CORP,
                                           DOHERTY, ENTERPRISES, SSCP
12                                         MANAGEMENT, APPLE
                                           INVESTORS GROUP; APPLE AB
13                                         ENTERPRISES; APPLE NORTH INC; AND
                                           APPLE CORE ENTERPRISES INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO
28

## <u>Attestation Regarding Signatures- Local Rule 5-4.3.4(a)(2)(i)</u>

I, Karin G. Pagnanelli, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: December 22, 2020          /s/ Karin G. Pagnanelli
                                                    Karin G. Pagnanelli

NEAL, GERBER &
EISENBERG LLP
ATTORNEYS AT LAW
CHICAGO

12761841.1